IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MELISSA JEAN MCDANIEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 7:13–CV–318 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Melissa Jean McDaniel ("McDaniel") filed this action challenging the final

decision of the Commissioner of Social Security ("Commissioner") determining that she was not

disabled and therefore not eligible for supplemental security income ("SSI") under the Social

Security Act ("Act").  42 U.S.C. §§ 1381–1383f.  Specifically, McDaniel alleges that the

Administrative Law Judge ("ALJ") erred by failing to request clarification of a consulting

physician's opinion, and by improperly discrediting the opinion of her treating physician. I

conclude that substantial evidence supports the Commissioner's decision on all grounds.

Accordingly, I **RECOMMEND DENYING** McDaniel's Motion for Summary Judgment (Dkt.

No. 13), and **GRANTING** the Commissioner's Motion for Summary Judgment.  Dkt. No. 15.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

support the Commissioner's conclusion that McDaniel failed to demonstrate that she was

disabled under the Act.[1]  "Substantial evidence is such relevant evidence as a reasonable mind

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment, which can be expected to result in death or which has lasted

1

might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

McDaniel filed for SSI on January 11, 2010, claiming that her disability began on September 1, 2009. R. 75–76. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 61–73, 74–86. On February 15, 2012, ALJ Benjamin McMillion held a hearing to consider McDaniel's disability claim. R. 30–60. McDaniel was represented by an attorney at the hearing, which included testimony from McDaniel and vocational expert Gerald Wells. R. 30–60.

On February 24, 2012, the ALJ entered his decision analyzing McDaniel's claim under the familiar five-step process, and denying her claim for benefits.[2] R. 15–25. The ALJ found that McDaniel suffered from the severe impairments of chronic low back pain, degenerative disc disease, chronic obstructive pulmonary disease that is controlled, gastroesophageal reflux

---

or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience. See 42 U.S.C. §1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

disease, obesity, depression, anxiety, post traumatic stress disorder, alcohol dependence in remission, and cannabis abuse in remission. R. 17. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R.17–18. The ALJ determined that McDaniel retained the residual functional capacity ("RFC") to perform sedentary work, with no more than occasional bending, stooping, crouching, crawling, and no climbing. R. 19. The ALJ also limited McDaniel to work with no more than simple job instructions. R. 19.

Given the above RFC, the ALJ determined that McDaniel could not return to her past relevant work as a furniture operator or machine operator, but that McDaniel could perform other jobs that exist in significant numbers in the national economy such as charge account clerk, addresser, and employment clerk. R. 25. Thus, the ALJ concluded that she was not disabled. R. 25. On May 18, 2013, the Appeals Council denied McDaniel's request for review (R. 1–5), and this appeal followed.

## ANALYSIS

McDaniel argues that the ALJ erred by 1) failing to obtain clarification from consulting physician Robert Stephenson, M.D., as to his opinion of McDaniel's functional capacity; 2) failing to give greater weight to the opinion of her treating physician James Lovelace, M.D. and nurse practitioner Beth Sutherland; and 3) failing to consider the combined severity of her mental and physical impairments. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's decision on each ground, and recommend affirming the final decision of the Commissioner.

3

**Duty to Recontact Physician**

On May 3, 2010, Dr. Stephenson performed a consultative examination of McDaniel.
R. 312–18. On exam, Dr. Stephenson noted normal range of motion and strength in McDaniel's
upper and lower extremities. McDaniel complained of diffuse and variable tenderness over her
entire lumbar region, and exhibited significant groaning and grimacing during palpation of the
low back region. R. 315. Dr. Stephenson did not observe any muscle spasms in the lumbar
region, no trigger points, and the straight leg raising test was negative to 80 degrees. R. 315.
McDaniel exhibited normal station and balance, and could heel and toe walk with increased pain.
R. 315.

Dr. Stephenson's impression was chronic low back pain, although he noted that
McDaniel's subjective symptoms appeared to outweigh her objective findings, and there was
evidence of symptom exaggeration. R. 316. Dr. Stephenson expressed concern about McDaniel's
report of intermittent loss of bowel control, and recommended a neurosurgical evaluation. He
also recommended formal psychiatric and/or psychological treatment for her depression and
posttraumatic stress, noting that those conditions were likely "comorbid with her low back pain
and additional treatment of these conditions may help alleviate some of [McDaniel's] low back
pain." R. 316.

With regard to McDaniel's functional capacity, Dr. Stephenson found that McDaniel
could stand or walk up to 1–2 hours in an 8-hour workday and sit up to 4–6 hours in an 8-hour
workday. R. 317. He recommended that McDaniel continue to use a cane for her safety issues.
Dr. Stephenson found that McDaniel can lift 5–10 pounds occasionally, can bend, stoop and
crouch occasionally, and should never climb ladders or repetitively climb stairs. R. 317.

4

When developing McDaniel's RFC, the ALJ gave Dr. Stephenson's opinion great weight, finding it consistent with his objective examination notes, as well as the other medical evidence of record. R. 21. The ALJ determined that McDaniel is capable of sedentary work, which involves standing and walking up to 2 hours in an 8-hour day and sitting up to 6 hours in an 8-hour day. R. 19. The ALJ also adopted the additional postural restrictions suggested by Dr. Stephenson in the RFC. R. 19.

McDaniel argues that Dr. Stephenson's opinion is ambiguous because it states a range of time that McDaniel can stand, walk and sit. McDaniel asserts that Dr. Stephenson's opinion could be interpreted to mean that she can only stand/walk for less than 2 hours some of the time, and sit for less than 6 hours, which would be inconsistent with sedentary work. Thus, McDaniel asserts that the ALJ was required to re-contact Dr. Stephenson for clarification of his opinion before developing an RFC. Specifically, McDaniel believes that the ALJ should have asked Dr. Stephenson to clarify how frequently McDaniel would be limited to the lower end of the sitting, standing and walking ranges, and that without such clarification, the court cannot determine whether the ALJ's RFC is supported by substantial evidence.

At the time of the ALJ's opinion in this case, the social security regulations required the ALJ to re-contact medical sources when the evidence from a claimant's treating physician or other medical source was inadequate to determine whether the claimant was disabled, or when it contained a conflict or ambiguity that must be resolved.[3] See 20 C.F.R. § 404.1512(e)(2006). Specifically, the regulation required the SSA to recontact a medical source to seek clarification when evidence received from that source "is inadequate for us to determine whether [the claimant is] disabled." 20 C.F.R. § 404.1512(e)(2006). Additional evidence or clarification must

---

[3] This regulation was deleted, effective March 26, 2012. See 20 C.F.R. §§ 404.1512(e); 416.912(e) (2012) (amended). The amended regulation does not address any obligation of the ALJ to recontact medical sources.

5

be sought from the medical source "when the report from [the claimant's] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." Id. Additionally, Social Security Ruling ("SSR") 96–5p states that "if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion."[4]

Here, Dr. Stephenson's opinion did not trigger the ALJ's duty to recontact, because the record was not inadequate to determine if McDaniel was disabled, and the opinion did not contain a conflict or ambiguity that must be resolved. See, e.g. Groseclose v. Comm'r, Civ. Action No. SAG-13-0200, 2013 WL 5487857, at *2 (D. Md. Sept. 27, 2013); Majica v. Astrue, CIV. A. 06-2900, 2007 WL 4443247, at *3 (E.D. Pa. Dec. 18, 2007). Dr. Stephenson's opinion stated McDaniel's functional limitations in ranges of time for standing, walking and sitting, which is a standard practice in social security disability cases. The ALJ is charged with reviewing opinion evidence, such as Dr. Stephenson's, which contain such ranges of time, and determining, based upon the record as a whole, the most that McDaniel can still do despite her limitations. 20 C.F.R. § 416.945(a)(1).

Further, the ALJ was not required to wholly adopt Dr. Stephenson's opinion, but rather, is charged with evaluating all the evidence in the record and assessing McDaniel's RFC based upon that evidence. The ALJ noted no ambiguities or confusion regarding the content of Dr. Stephenson's opinion. Rather, he concluded that the conclusions reached by Dr. Stephenson

---

[4] Notably, the regulation only refers to recontacting treating sources, and does not appear to apply to a consultative physician such as Dr. Stephenson. SSR 96–5p, 1996 WL 374183 (SSA) (July 2, 1996).

6

were supported by the objective medical evidence.  Dr. Stephenson's description of McDaniel's physical capacity is consistent with "sedentary work," as that term is defined by the regulations. See 20 C.F.R. § 416.967(a); Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (SSA)(sedentary work involves sitting with occasional walking and standing, which means sitting for approximately 6 hours and standing/walking for no more than about 2 hours in an 8-hour workday).  Accordingly, once the ALJ concluded that the opinions expressed by Dr. Stephenson were entitled to great weight, substantial evidence supported the ALJ's decision to find McDaniel capable of performing sedentary work with certain postural limitations.

Additionally, McDaniel was represented by counsel at the hearing (R. 30–60), and there was no suggestion made at the hearing concerning a need to withhold a disability determination pending a further development of the record, or clarification from Dr. Stephenson.  At the conclusion of the hearing the ALJ asked counsel if there was any reason they could not close the record, and the attorney stated, "Your honor, I believe we have everything we can get." R. 59. An attorney may not later attack the ALJ for failing to investigate further when the attorney approved of the record. Baldwin v. Colvin, Civ. Action No. 2:12cv76, 2014 WL 3939213, at *2 (W.D.N.C. Aug. 12, 2014) (citing Hardy v. Astrue, No. 11-299, 2013 WL 66082, at *7 (W.D.N.C. Jan. 4, 2013)).  Thus, the ALJ was not required to re-contact Dr. Stephenson to clarify his opinion with regard to McDaniel's functional capacity.

**Treating Physician Opinion**

McDaniel alleges that the ALJ erred by failing to give greater weight to the opinion of her treating physician James Lovelace, M.D. and nurse practitioner Beth Sutherland.  Dr. Lovelace is an orthopedic surgeon who treated McDaniel for her chronic back pain from August 2009 through the date of the denial decision.  Dr. Lovelace saw McDaniel approximately once

7

every six weeks, and generally prescribed pain medication.  McDaniel sought more frequent

treatment with Nurse Sutherland during the alleged period of disability.

On June 14, 2010, Dr. Lovelace completed a medical evaluation of McDaniel, and found

that she was not able to participate in employment due to limitations with lifting, bending,

walking, standing and sitting. R. 429–30. Dr. Lovelace noted that McDaniel's primary diagnosis

was lumbar degenerative disc disease and chronic low back pain, that she was compliant with

prescribed treatment, and that her condition hinders her ability to care for her children. Dr.

Lovelace's opinion is a checkbox form, and does not specify McDaniel's functional capacity for

specific functional categories, or contain any explanation for his conclusions. R. 429–30.

On January 27, 2012, Nurse Sutherland completed a fibromyalgia residual functional

capacity questionnaire for McDaniel. R. 455–57. Nurse Sutherland found that McDaniel's pain

and symptoms would interfere with her attention and concentration occasionally; that she can sit

about 2 hours in an 8-hour day, stand and walk about 2 hours in an 8-hour workday, and rarely

lift 10 pounds or less. R. 455–56. Nurse Sutherland noted that McDaniel could rarely perform

postural activities like twisting, stooping and bending, and that she would miss more than 4 days

of work per month on average as a result of her impairments. R. 456.

On February 13, 2012, Dr. Lovelace completed a second checkbox form, indicating that

McDaniel is limited to sitting, standing and walking less than 2 hours in an 8-hour workday, and

occasionally lifting 10 pounds or less. R. 458.  Dr. Lovelace found that McDaniel's pain would

often interfere with her attention and concentration and that she would miss about 4 days of work

per month due to her impairments. R. 458.

The ALJ considered the opinions of Dr. Lovelace and Nurse Sutherland, and gave them

little weight, finding them inconsistent with the medical evidence of record, including their own

8

treatment notes. R. 23.  The ALJ also noted that McDaniel has not alleged that she is limited to less than 2 hours of sitting per day and the record did not reflect complaints of deficits with her concentration or attention. R. 23.  As noted above, the ALJ gave great weight to the opinion of consulting physician Dr. Stephenson, who found McDaniel capable of performing sedentary work.

A treating physician's opinion is not automatically entitled to controlling weight. Treating physicians' opinions are given controlling weight only if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); Saul v. Astrue, Civ. Action No. 2:09-cv-1008, 2011 WL 1229781 (S.D. W.Va. March 28, 2011).  Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010).

A nurse practitioner's opinion is considered a "non-acceptable medical opinion" by the regulations; however the ALJ is required to consider the opinion of a non-acceptable medical source, especially when there is evidence in the record to suggest that the non-acceptable

9

medical source had a lengthy relationship with the claimant and can present relevant evidence as to the claimant's impairment or ability to work. Foster v. Astrue, 826 F. Supp. 2d 884, 886 (E.D.N.C. 2011); SSR 06-03p, 2006 WL 2329939 (SSA) (Aug. 9, 2006).

Having reviewed the record, I find substantial evidence to support the ALJ's decision to give the opinions of Dr. Lovelace and Nurse Sutherland little weight, and rely instead upon the opinions of Dr. Stephenson and the state agency physicians when developing McDaniel's RFC. Dr. Lovelace and Nurse Sutherland's opinions are checkbox forms[5] with little explanation, and are not fully supported by their treatment notes.

Dr. Lovelace's treatment notes are sparse, and provide little insight into McDaniel's functional limitations throughout her treatment. Conversely, Nurse Sutherland's treatment notes are detailed and reflect McDaniel's consistent complaints of back pain. However, neither Dr. Lovelace nor Nurse Sutherland's notes reflect functional limitations arising from McDaniel's pain such that she is incapable of performing even sedentary work. On physical exam, McDaniel consistently exhibited lumbar paraspinal muscle tenderness; however, she had full flexion, extension and rotation left and right of her lumbar spine. R. 324, 327, 328. There are no other physical limitations consistently noted in Nurse Sutherland's treatment notes.

Additionally, Nurse Sutherland's treatment notes reflect that McDaniel received significant and consistent pain relief from trigger point injections and that her other ailments, including depression and asthma, were controlled. R. 321–32, 336. On February 11, 2010, McDaniel reported that "the injections really do help….They help her to be able to do more,

---

[5] Courts in the Fourth Circuit have recognized the limited probative value of such checkbox opinion forms. Leonard v. Astrue, No. 2:11cv00048, 2012 WL 4404508, at *4 (W.D. Va. Sept. 25, 2012) (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir.1993) ("Such check-the-box assessments without explanatory comments are not entitled to great weight, even when completed by a treating physician.")

10

stand longer and lift and be able to function better…" R. 330.  On March 11, 2010, McDaniel reported that the injections "helped significantly." R. 328.

Dr. Lovelace and Nurse Sutherland's opinions also conflict with the other medical opinions in the record. As noted above, Dr. Stephenson determined that McDaniel is capable of performing a range of sedentary work. R. 317.  On May 26, 2010, state agency physician Thomas Phillips, M.D. reviewed McDaniel's medical records, and determined that she could occasionally lift 20 pounds, and frequently lift 10 pounds, stand and walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, and occasionally bend, stoop, and crouch. R. 68–70. On September 21, 2010, state agency physician Richard Surrusco, M.D., reviewed McDaniel's records and affirmed Dr. Phillips' conclusions. R. 82–83. The ALJ gave the state agency physician's opinions some weight because they have a high level of understanding of the social security disability program, reviewed all of the evidence in the record, and their opinions were consistent with the evidence of record. R. 23–24.

McDaniel argues that the greater weight of the medical evidence supports Dr. Lovelace's opinions, and points to multiple treatment records reflecting her complaints of and treatment for back pain. Certainly, McDaniel consistently complained of and was treated for back pain.  The existence of back pain alone does not render McDaniel disabled.  Rather, she must suffer from functional limitations such that she cannot perform even a range of sedentary work.  Dr. Lovelace and Nurse Sutherland's records reflect complaints of pain but benign physical findings on exam. Further, McDaniel reported on multiple occasions that the injections she received gave considerable relief from her back pain.  Considering McDaniel's treatment records, the mild findings on objective exam, and the opinions of the other physicians in the record, substantial

evidence supported the ALJ's decision to give the opinions of Dr. Lovelace and Nurse Sutherland little weight.

The issue before this court is not whether it is plausible that a different fact finder could have drawn a different conclusion or even if the weight of the evidence supports a finding of disability. The standard is whether the ALJ's decision is supported by substantial evidence, which is more than a scintilla and less than a preponderance. There may be a myriad of possible decisions in any one case that are supported by substantial evidence. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's decision to give the opinions of Dr. Lovelace and Nurse Sutherland little weight, and recommend that it be affirmed.

McDaniel also argues that the ALJ failed to provide specific reasons for the weight given to Dr. Lovelace's opinion, supported by evidence in the case record, as required by the regulations. Here, the ALJ recited the factors that he was required to consider, and provided good reasons for the weight given to the treating sources' opinions. While the regulations require the ALJ to consider all six factors, the ALJ is "not required to make a seriatim assessment as if it were a sequential evaluation." Vaughn v. Astrue, No. 4:11-cv-29, 2012 WL 1267996, at *5 (W.D. Va. Apr. 13, 2012). The ALJ was not required to engage in a point-by-point analysis of the evidence as it relates to each of the factors. Murrell v. Colvin, 4:13-CV-124-FL, 2014 WL 2114890, at *5 (E.D.N.C. May 20, 2014). It may be preferable for the ALJ to state in greater detail why he gave little weight to the opinion of Dr. Lovelace. Nevertheless, the ALJ indicated that he considered the record as a whole, and his opinion reflects that he reviewed McDaniel's medical history in detail. The ALJ recited the factors that he must consider when evaluating medical opinion evidence, examined each of the opinions given, stated the weight given to each opinion, and stated specific reasons for giving each opinion certain weight. Accordingly, I find

12

that the ALJ properly evaluated Dr. Lovelace's opinion, and substantial evidence supports his decision to give the opinion little weight.

**Combined Effect of Impairments**

McDaniel also asserts that the ALJ failed to evaluate the combined severity of her mental and physical impairments as required by the regulations. Pl. Br. Summ. J. p. 3, n. 3. Where a claimant has multiple impairments, the ALJ must consider the combined effect of those impairments in determining whether the claimant is disabled. 20 C.F.R. § 404.1523; Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). "It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render [a] claimant unable to engage in substantial gainful activity." Id. at 50. In addition to "not fragmentiz[ing]" the effect of the claimant's impairments, "the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." Id. at 50 (citing Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir.1985)). "[A]n ALJ need not explicitly state that he or she has considered a claimant's impairments in combination. What matters is whether it is discernible from the ALJ's decision that he or she did so." Jones v. Astrue, Civ. Action No. 7:10cv00313, 2011 WL 1877677, at *12 (W.D. Va. May 17, 2011).

Here, the ALJ found that McDaniel suffered from both mental and physical severe impairments. The ALJ's opinion reflects that he thoroughly considered all of the evidence relating to both McDaniel's alleged physical and mental impairments when developing her RFC. The ALJ explicitly states that he considered whether McDaniel's combination of impairments were severe enough to qualify as disabling. Further, the RFC developed by the ALJ includes both physical and mental limitations. R. 19. Therefore, I find that the ALJ did not fail to analyze the combined effect of McDaniel's medical impairments.

13

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: February 11, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge